UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRENTON D. HUDSON,                              Case No. 16-10032

        Plaintiff,                       John Corbett O'Meara
v.                                             United States District Judge

COMMISSIONER OF SOCIAL SECURITY,               Stephanie Dawkins Davis
                                               United States Magistrate Judge
        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 11)**

## I.   PROCEDURAL HISTORY

    A.   Proceedings in this Court

On January 5, 2016, plaintiff filed the instant suit seeking judicial review of

the Commissioner's decision disallowing social security disability benefits.  (Dkt.

1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge John Corbett O'Meara referred this matter the undersigned for the purpose

of reviewing the Commissioner's decision denying plaintiff's claims.  (Dkt. 2).

This matter is before the Court on cross-motions for summary judgment.  (Dkt. 10,

11).  The cross-motions are now ready for report and recommendation.

    B.   Administrative Proceedings

On November 6, 2012 plaintiff filed claims for period of disability,

disability insurance benefits, and supplemental security income alleging disability beginning March 8, 2011. (Dkt. 7-2, Pg ID 66). The Commissioner initially denied plaintiff's disability application on April 24, 2013. *Id*. Thereafter, plaintiff requested an administrative hearing, and on April 7, 2014, he appeared with counsel before Administrative Law Judge ("ALJ") David F. Neumann, who considered his case *de novo*. (Dkt. 7-2, Pg ID 78-107). In a July 15, 2014 decision, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act. *Id*. at Pg ID 63-74. The ALJ's decision became the final decision of the Commissioner on November 24, 2015, when the Social Security Administration's Appeals Council denied plaintiff's request for review. *Id*. at Pg ID 32-38.

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED** and that this matter be **REMANDED** for further proceedings under Sentence Four.

## II.   FACTUAL BACKGROUND

### A.   ALJ's Findings

On the alleged onset date of disability, plaintiff was 39 years old, which falls into the category of "a younger individual." (Dkt. 7-2, Pg ID 73). Plaintiff

has past relevant work as crane operator, janitor and hi-lo driver.  *Id*. at Pg ID 73.

Plaintiff suffers from degenerative disc disease, fibromyalgia, glaucoma and

osteopenia.  *Id*. at Pg ID 68-69.  Plaintiff stopped working in December 2009

because of his health conditions.  (Dkt. 7-6, Pg ID 222).

The ALJ applied the five-step disability analysis to plaintiff's claims and

found at step one that plaintiff did not engage in any substantial gainful activity

since the alleged onset date.  (Dkt. 7-2, Pg ID 68).  At step two, the ALJ found that

plaintiff had the following severe impairments: degenerative disc disease of the

lumbar spine, fibromyalgia, and osteopenia.  The ALJ concluded that plaintiff's

glaucoma was not severe.  *Id*.  At step three, the ALJ found that plaintiff did not

have an impairment or combination of impairments that met or equaled one of the

listings in the regulations.  *Id*. at Pg ID 69.  The ALJ determined that plaintiff has

the following residual functional capacity:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform sedentary work as defined
> in 20 CFR 404.1567(a), as the claimant can lift and/or
> carry 10 pounds; push/pull with the upper and lower
> extremities up to 10 pounds; stand and/or walk for 2
> hours in an 8-hour workday; and sit for 6 hours in an
> 8-hour workday. The claimant requires a sit/stand option
> (at will) while remaining at the workstation. The
> claimant must avoid unprotected heights; and is
> restricted to stable temperatures. The claimant can
> occasionally climb ramps and stairs; and occasionally
> balance, stoop, kneel, crouch, and crawl. The claimant

> requires simple, routine, and repetitive work at an SVP
> of one or two; and will not be off task more than 10% of
> the workday. The claimant requires work with no
> fast-paced production requirements; and few workplace
> changes.

*Id.* at Pg ID 69.  The ALJ noted that, in determining plaintiff's RFC, he considered

Acquiescence Rule 98-4(6), which addresses *Drummond v. Comm'r of Soc. Sec.*,

126 F.3d 837 (6th Cir. 1997).  That is, the ALJ considered the previous decision

made by another ALJ and determined that plaintiff's RFC was almost the same as

previously assessed.  The ALJ changed some of the postural limitations, based on

plaintiff's ability to squat without difficulty as the consultation examination

showed.  (Dkt. 7-2, Pg ID 69, n. 1).  At step four, the ALJ determined that plaintiff

could not perform any past relevant work.  *Id.* at Pg ID 72.  At step five, the ALJ

found that, given plaintiff's age, education, work experience and RFC, there are

sufficient jobs that exist in the national economy that plaintiff can perform.  *Id.* at

Pg ID 73-74.  Thus, the ALJ concluded that plaintiff has not been under a

disability from the alleged onset date through the date of the ALJ's decision.  *Id.* at

Pg ID 74.

     B.    <u>Plaintiff's Claims of Error</u>

Plaintiff's first contention of error is that the ALJ failed to comply with 20

C.F.R. § 404.1503(e), which requires the State agency to have a psychologist or

psychiatrist review a file when there is evidence of the existence of a mental

impairment.  Plaintiff says that the medical documentation from Dr. Hudson supports the existence of a mental impairment.  Specifically, on July 22, 2013, plaintiff complained of difficulty getting things done and no energy, and Dr. Hudson diagnosed him with depression.  (Dkt. 7-7, Pg ID 336).  Further, during a physical examination on June 17, 2013, Dr. Hudson noted a flat effect and that plaintiff was tearful during the evaluation.  (Dkt. 7-7, Pg ID 340).  The diagnosis on was again, depression.  *Id*.  According to plaintiff, his mental health complaints throughout the medical treatment from Dr. Hudson are plentiful and are incorporated with his pain complaints.  The medical documentation from Dr. Hudson also supports the longevity of his complaints.  Specifically, on November 5, 2009, he complained of difficulty sleeping and other complaints.  In response, Dr. Hudson recommended an anti-depressant.  Consequently, plaintiff maintains that there is medical evidence in the file to support the existence of a mental impairment and the ALJ failed to comply with 20 C.F.R. § 404.1503(e).  Therefore, this matter should be remanded for proper evaluation of plaintiff's mental impairment.

Next, plaintiff asserts that there is no support for the ALJ's RFC assessment because the record does not contain a doctor's medical opinion regarding plaintiff's RFC.  While the ALJ outlined his conclusions concerning plaintiff's RFC based on his review of the medical documentation, he also recognized that

"there is no opinion from an acceptable State agency consultant . . ." and "the record does not (sic) any limitations from the claimant's treating providers." (Dkt. 7-2, Pg ID 72). Therefore, plaintiff's RFC is basically the ALJ's assessment of the medical evidence and what limitations he found based on the medical evidence. According to plaintiff, the RFC as defined is a medical assessment which the ALJ is clearly not qualified to perform. Rather, plaintiff maintains that the ALJ is required to enlist the opinion of a physician in assessing plaintiff's RFC; therefore, the ALJ failed to follow 20 CFR 404.1545(a), 416.945(a); 20 CFR 404.1520(e)(f), 416.920(e)(f) as well as SSR 83-10 and this matter should be remanded for a proper evaluation of plaintiff's RFC.

Third, plaintiff contends that the ALJ violated SSR 96-8p by not considering the effect of plaintiff's chronic headaches, IBS, and depression on his ability to work. According to plaintiff, the medical evidence as indicated above documents longitudinal complaints of depression for approximately five years of complaints. In addition, the medical documentation from Dr. Hudson includes complaints of headaches, however, the ALJ does not discuss his chronic headaches or his depression anywhere in the decision. Plaintiff maintains that these medical conditions would cause plaintiff to experience functional limitations that should have been addressed in assessing his overall RFC. In addition to the medical documentation, plaintiff testified to experiencing constant headaches and

6

IBS (abdominal pain), as well as feelings of sadness, hopelessness, helplessness, and not feeling like doing anything - all possible symptoms of depression.  (Dkt. 7-2, Pg ID 80-100).  The medical documentation also shows that plaintiff has sought emergency medical treatment on numerous occasions for abdominal pain and his complaints about abdominal pain appear throughout the documentation from Dr. Hudson.  (Dkt. 7-7, Pg ID 284).  The VE indicated that plaintiff might be able to perform work as a hand assembler, sorter, or inspector, but plaintiff says his depression, irritable bowel syndrome, and constant headaches would prevent such work as the conditions would serve as a distraction and require frequent breaks.  (Dkt. 7-2, Pg ID 104).  Plaintiff also says that his glaucoma also severely limits his ability to serve in a position requiring visual acuity.

Plaintiff also contends that the ALJ's RFC finding failed to comply with SSR 96-8p in that he failed to include the required "function-by-function assessment."  Although the ALJ does outline some of his opinions concerning plaintiff's RFC, plaintiff asserts that the ALJ failed to consider his ability to sit, stand, walk, lift, carry, push, and pull separately, and to specify the medical evidence he relied on in coming to his conclusions on his physical RFC.  The jobs discussed by the VE as possibilities all require sitting, standing, and lifting and may require walking, carrying, pushing and pulling.  Yet, according to plaintiff, the ALJ failed to assess his ability to perform each of the functions.  Therefore, the

ALJ failed to follow SSR 96-Bp and this matter should be remanded for a proper evaluation of plaintiff's headaches, IBS and depression, and how these medical conditions effect his RFC.

Plaintiff claims the ALJ also failed to properly evaluate plaintiff's side effects from his many medications on his ability to work, as required.   The medical documentation from Dr. Hudson and other medical providers indicates that plaintiff has been utilizing numerous medications for the treatment of his multiple severe medical conditions.  Specifically, the medical documentation from Dr. Hudson indicates that as of July 22, 2013, he was utilizing Vicodin, Valium, Ambien, and medical marijuana.  (Dkt. 7-7, Pg ID 336).  On the date of his hearing, plaintiff testified to using Ambien, Norco, Valium, and Wellbutrin.  (Dkt.7-2, Pg ID 80-100).  He also reported that he experienced tiredness as a side effect of his medications. *Id*.  According to plaintiff, the ALJ did not properly weigh this tiredness into plaintiff's RFC either.

   C.   Commissioner's Motion for Summary Judgment

The Commissioner first argues that the ALJ was not required to obtain a consultative evaluation.  The Commissioner says plaintiff's argument that the ALJ violated 20 C.F.R. § 404.1503(e) by failing to obtain a psychological or psychiatric evaluation to explore plaintiff's depression is without merit.  Plaintiff's argument fails because (1) plaintiff has not shown that he had a significant mental

8

impairment that caused additional work-related limitations; and (2) the ALJ was entitled to rely on plaintiff's counsel to develop the record regarding any mental impairment(s). The regulation on which plaintiff relies, 20 C.F.R. § 404.1503(e), is an extension of 42 U.S.C. § 421(h), which states that, "in any case where there is evidence which indicates the existence of a mental impairment," an initial disability determination should be made "only after every reasonable effort has been made to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment." The Commissioner maintains that this language does not impose an absolute duty on the ALJ to have a psychiatrist or psychologist review every case where a mental impairment is raised. *See Bernal v. Bowen*, 851 F.2d 297, 302 (10th Cir. 1988) (discussing legislative history); *see also Lawson v. Chater*, 1996 WL 577642, at *4-5 (6th Cir. Oct. 7, 1996) (citing *Bernal* with approval, and noting that the record was "devoid of any evidence that challenges the ALJ's assessment of Lawson's [RFC] or the ALJ's conclusion that Lawson had a nonsevere mental impairment"). The failure to consult with an expert requires remand only where there is "significant evidence of a possible mental impairment that allegedly prevented the claimant from working." *Marcum v. Comm'r of Soc. Sec.*, 2000 WL 92262, at *4 (6th Cir. Jan. 18, 2000) (finding evidence insufficient to raise inference of significant mental impairment where the record contained a

9

single report of depression and some reports of nonrestorative sleep; plaintiff was
prescribed Amitriptyline for sleep; and he testified that he "stay[ed] depressed a
lot," which kept him from working).

According to the Commissioner, plaintiff has not presented significant
evidence of a disabling mental impairment, and his argument that the ALJ violated
his "affirmative duty to develop the record" misses the mark.  Plaintiff was
represented by counsel during the administrative proceedings; therefore, the ALJ
did not have a heightened duty to develop the record and was entitled to "rely on
counsel to present [Plaintiff's] case and to develop [his] claims." *Woelk v. Comm'r
of Soc. Sec.*, 2014 WL 2931411, at *2 (E.D. Mich. June 30, 2014); *Wilson v.
Comm'r of Soc. Sec*., 280 Fed. Appx. 456, 459 (6th Cir. 2008) (absent special
circumstances, the Court "repeatedly affirms that the claimant bears the ultimate
burden of proving disability").  The Commissioner also points out that plaintiff did
not attribute his alleged disability to any mental impairment during his April 2014
hearing.  (Dkt. 7-2, Pg ID 78-107).  When his attorney tried to elicit testimony
about a disabling mental impairment, plaintiff reported "feeling like the world is
pretty much against me I guess," and he insisted that his primary stressor was "just
the pain."  (Dkt. 7-2, Pg ID 97).  His attorney pressed for more details about
plaintiff's mental functioning, but he merely stated: "It's just I think that
everything around me is just not the way it once was, and it deters me to see that

10

[sic] my family goes through when you're pretty much been [sic] the primary care giver and….".  *Id*.

Given plaintiff's confirmation that his ailments were primarily physical, the Commissioner contends that the ALJ had no reason to believe that plaintiff had a significant mental impairment that warranted further development.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.").  Furthermore, plaintiff has not cited any objective evidence supporting greater mental limitations than the ALJ assessed, and his vague testimony that his inability to provide for his family "deters" him did not trigger a duty to order a consultative examination.  *See Marcum*, 2000 WL 92262, at *4; *Roache v. Comm'r of Soc. Sec.*, 2015 WL 669875, at *2 (E.D. Mich. Feb. 13, 2015) (rejecting plaintiff's argument that the ALJ should have ordered a consultative examination to explore her alleged social anxiety where plaintiff failed to produce objective evidence that greater mental limitations were warranted).

Additionally, the Commissioner contends that the ALJ was not required to base his RFC findings on a medical opinion.  *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. Appx. 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source

11

the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'" (quoting SSR 96-5p, 1996 WL 374183)); *see also Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157 (6th Cir. 2009) ("[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a [RFC] finding."). Nor was the ALJ required to "seek out a physician's medical opinion where one [was] not offered." *Brown v. Comm'r of Soc. Sec.*, 602 Fed. Appx. 328, 331 (6th Cir. 2015). Notably, no physician recommended any physical or mental limitations, let alone greater limitations than the ALJ found. *See Maher v. Sec'y of Health & Human Servs.*, 898 F.2d 1106, 1109 (6th Cir. 1989) ("[A] lack of physical restrictions constitutes substantial evidence for a finding of non-disability."). Therefore, the Commissioner asserts that the ALJ properly assessed plaintiff's RFC based on the limited evidence that was available to him—Plaintiff's testimony and medical records, which reflected relatively mild diagnostic findings, essentially normal clinical findings, and a history of noncompliance with recommended treatment. (Dkt. 7-2, Pg ID 69-72); *See Poe*, 342 Fed. Appx. at 157; *see also Woelk*, 2014 WL 2931404, at *8 (rejecting challenge to RFC assessment where plaintiff failed to "provide any medical opinion from the relevant time period that established any workplace limitations

12

arising from his impairments" rec. dec. aff'd, 2014 WL 2931411 (June 30, 2014).

The Commissioner also contends that the ALJ assessed an RFC that was even more favorable to plaintiff than the medical evidence warrants, imposing exertional, postural, environmental, and mental limitations that were based largely on plaintiff's subjective complaints of pain and decreased endurance and mobility. (Dkt. 7-2, Pg ID 72, citing Dkt. 7-2, Pg ID 81-98; Dkt. 7-6, Pg ID 230-237). The ALJ credited many of plaintiff's self-reported limitations despite evidence that he was not always compliant with treatment (Dkt. 7-2, Pg ID 72, citing Dkt. 7-7, Pg ID 284-285; Dkt. 7-7, Pg ID 540); that he had relatively mild diagnostic findings and normal clinical findings (Dkt. 7-2, Pg ID 72, citing Dkt. 7-7, Pg ID 276-277, 283-285, 309-317, 345-349, 355-359, 375-396, 541-542); and that no treating source proposed any functional restrictions that substantiate plaintiff's complaints of disabling pain and fatigue. (Dkt. 7-2, Pg ID 72). The Commissioner also points out that the ALJ's RFC findings were more favorable to Plaintiff than the uncontradicted report of consultative examiner Harold Nims, D.O., who opined that plaintiff "seems capable of nonstrenuous activity without any significant limits on his mobility." (Dkt. 7-7, Pg ID 313). Thus, even if the ALJ had erred by not tethering his RFC findings to a particular medical opinion, remand would serve no purpose because plaintiff cannot point to any competent evidence that a more-restrictive RFC was warranted. *See Shinseki v. Sanders*, 556 U.S. 396, 409

(2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *see also Her*, 203 F.3d at 391-92 (Plaintiff bears the burden of establishing his RFC).

Next, the Commissioner argues that the ALJ properly considered the alleged effects of plaintiff's headaches, irritable bowel syndrome, and depression. According to the Commissioner, plaintiff's argument fails because: (1) the ALJ expressly acknowledged plaintiff's reported chronic pain, glaucoma, and headaches (Dkt. 7-2, Pg ID 70); (2) the ALJ sufficiently accommodated and accounted for the combined effects of plaintiff's severe and nonsevere impairments by restricting him to a very limited range of simple, sedentary work (Dkt. 7-2, Pg ID 69-72); and (3) plaintiff has not shown that further discussion of his impairments would result in a more favorable RFC. *See Sanders*, 556 U.S. at 409 (2009); *Her*, 203 F.3d at 391-92. The Commissioner says that plaintiff appears to have overlooked the ALJ's explicit acknowledgment that, "[i]n forms submitted to the Administration and throughout [plaintiff's] testimony at the hearing, [he] alleges that he is unable to work due to chronic pain, glaucoma and headaches." (Dkt. 7-2, Pg ID 70). According to the Commissioner, there is an important distinction between failing to consider evidence, on one hand, and simply assigning it limited weight, on the other. Here, the ALJ specifically addressed plaintiff's abdominal pain, glaucoma, and headaches (Dkt. 7-2, Pg ID

70-71), but supportably found that his combined impairments were not disabling.

The Commissioner also posits that plaintiff's claim of severely limiting glaucoma directly conflicts with substantial evidence in the record. For example, Dr. Nims' April 2012 consultative examination showed that plaintiff's corrected vision was 20/30 in the right eye and 20/40 in the left eye. (Dkt. 7-7, Pg ID 311). Plaintiff also indicated in his February 2013 Function Report that he had no difficulty seeing (Dkt. 7-6, Pg ID 235); and he did not require any consistent treatment for eye problems (Dkt. 7-2, Pg ID 68-69). The ALJ specifically noted the lack of ongoing eye treatment as well as Dr. Nims' evaluation of plaintiff's vision (Dkt. 7-2, Pg ID 68-69), thus undermining plaintiff's claim that the ALJ failed to consider the effects of his glaucoma. Although Plaintiff testified that he had daily headaches (Dkt. 7-2, Pg ID 84), the ALJ noted that "[t]here is also no mention of any headaches in the record" (Dkt. 7-2, Pg ID 72). While plaintiff states, without citation, that "the medical documentation from Dr. Hudson includes complaints of headaches," the Commissioner maintains that there are no medical findings or opinions to substantiate his claims that he experienced debilitating headaches on a daily basis. Therefore, the ALJ was not required to include specific headache-related limitations in his RFC assessment and corresponding hypothetical questions to the VE.

The record also belies plaintiff's contention that the ALJ failed to consider

his reported abdominal pain. As the ALJ noted, diagnostic studies failed to corroborate plaintiff's complaints of abdominal pain. (Dkt. 7-2, Pg ID 71-72, citing Dkt. 7-7, Pg ID 345-349, 355-359, 375-376, 404-405). Still, the ALJ partially credited plaintiff's subjective complaints of abdominal pain and constipation, finding that they affected his concentration and limited him to simple work. (Dkt. 7-2, Pg ID 72). According to the Commissioner, plaintiff's unsupported assertion that his alleged impairments caused some unknown limitations that the ALJ failed to consider is not a proper basis for disturbing the ALJ's decision. The Commissioner assets that there is simply no medical evidence in the record to support plaintiff's claim that his combined impairments would preclude a significantly reduced range of sedentary work and would require him to be off-task more than 10 percent of the day. Because he has not shown that a more-restrictive RFC was warranted, his argument fails. *See Sanders*, 556 U.S. at 409 (2009); *Her*, 203 F.3d at 391-92.

The Commissioner also asserts that the ALJ properly explained his RFC findings with a sufficient narrative support for his finding that plaintiff could perform a range of simple, routine, repetitive, sedentary work with a sit/stand option. (Dkt. 7-2, Pg ID 67-72). He expressly weighed the nature and course of treatment, including the effects of medications; the objective laboratory and clinical findings; and plaintiff's own statements regarding the severity and limiting

effects of his impairments.  (Dkt. 7-2, Pg ID 68-72).  He also noted that none of

plaintiff's treating providers proposed any specific functional limitations.  (Dkt. 7-

2, Pg ID 72); *see Maher v. Sec'y of Health & Human Servs*., 898 F.2d 1106, 1109

(6th Cir. 1989) ("[A] lack of physical restrictions constitutes substantial evidence

for a finding of non-disability.").  At the April 2014 hearing, the ALJ specifically

asked plaintiff how much he could lift, carry, push, pull, stand, sit, and walk (Dkt.

7-2, Pg ID 90). The ALJ explicitly addressed those functions throughout the

decision. (Dkt. 7-2, Pg ID 70, citing Dkt. 7-2, Pg ID 90; Dkt. 7-2, Pg ID 71, citing

Dkt. 7-2, Pg ID 90; Dkt. 7-7, Pg ID 309; Dkt. 7-2, Pg ID 71, citing Dkt. 7-7, Pg ID

311). The ALJ specifically found that plaintiff required the option to sit or stand at

will (Dkt. 7-2, Pg ID 69), which forecloses any argument that the ALJ failed to

assess his ability to perform those particular functions.  Moreover, there is some

authority that the ALJ's finding that Plaintiff could perform a range of sedentary

work, as defined in 20 C.F.R. § 404.1567(a), necessarily encompasses a finding

that he could perform the exertional functions associated with sedentary work.

*See Hernandez v. Comm'r of Soc. Sec*., 2015 WL 1566144, at *6 n.2 (E. D. Tenn.

Apr. 7, 2015) ("The definition of light work found in the rulings and regulations

encompasses the above work-related activities. Thus, the regulations and ruling

explain the exertional demands associated with light work, and the ALJ's RFC

finding sufficiently constitutes the 'function by function' assessment contemplated

by SSR 96-8p.") (internal citations omitted). Even if the ALJ had failed to provide narrative support for his RFC assessment, the Commissioner also asserts that plaintiff's argument fails because he cannot show prejudice. *See Sanders*, 556 U.S. at 409 (2009). Plaintiff has presented no evidence beyond his own allegations, which the ALJ partially discounted, to support his contention that greater restrictions were warranted. (Dkt. 7-2, Pg ID 50-52).

Finally, with regard to plaintiff's argument that the ALJ failed to consider the side effects of his medications, the Commissioner asserts that plaintiff's argument is based on a mischaracterization of the record. When plaintiff's attorney asked him about the side effects of his medications during the July 2014 hearing, plaintiff reported constipation, eye discoloration, and itching (though he did not know whether the itching was an actual side effect). (Dkt. 7-2, Pg ID 97-98). Plaintiff did state that he experienced fatigue, but he attributed that symptom to fibromyalgia and "the chronic pain in general," rather than his medications. (Dkt. 7-2, Pg ID 98). Moreover, plaintiff specifically denied any side effects in his February 2013 Function Report, stating only that he took eye drops that made his eyes "dry sometimes." (Dkt. 7-6, Pg ID 237). Therefore, according to the Commissioner there is no basis for plaintiff's contention that the ALJ improperly excluded medication-induced "tiredness" from his RFC assessment. And, because there is no evidence that plaintiff's medications made him so tired that he could

18

not tolerate simple, routine, repetitive, sedentary work with a sit/stand option that would allow him to be off-task up to 10 percent of the work day (Dkt. 7-2, Pg ID 69), the ALJ did not err by omitting such a restriction from his RFC assessment.

## III.   DISCUSSION

### A.   Standard of Review

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247,

quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

    B.    <u>Analysis</u>

        1.    Mental impairments

In the view of the undersigned, plaintiff misinterprets 20 C.F.R.

§ 404.1503(e), which applies only to initial determinations finding mental

impairments.  That is, this regulation requires a psychiatrist or psychologist to

review the record before the Commissioner can make the *initial decision* on a

benefits claim and this regulation is unrelated to consultative examinations after

that decision and before the hearing.  *Spuhler v. Colvin*, 2014 WL 4855743, at *18

(E.D. Mich. June 17, 2014), report and recommendation adopted in part, 2014 WL

4856153 (E.D. Mich. Sept. 30, 2014) (citing *Mays v. Colvin*, 2013 WL 5797681,

at *4 (N.D. Ohio Oct. 28, 2013)).  Nothing in plaintiff's application would have

suggested the need for a review by a psychiatrist or psychologist. Plaintiff identified musculoskeletal pain, glaucoma, fibromyalgia, osteopenia, degenerative disc disease, possible pancreatitis, migraines Vitamin D malabsorption, and low bone density as his medical conditions. (Dkt. 7-6, Pg ID 222). Moreover, the mere existence of a depression diagnosis mentioned in the medical records does not suggest that plaintiff necessarily had a determinable mental impairment or that it was even severe for purposes of step two. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (Mere diagnosis of a condition says nothing about the severity of a condition.). Here, there are scant medical records evidencing plaintiff's depression and only minimal evidence of treatment. On this record, the undersigned finds no error in the ALJ's treatment of plaintiff's alleged mental impairment.

### 2.    Physical Impairments

While plaintiff complains about the lack of any medical advisor opinion in this record as it relates to the ALJ's formulation of the RFC, the undersigned concludes that the lack of a medical opinion in this record on the issue of equivalence is a step three error requiring remand. In this case, the single decisionmaker ("SDM") model was used pursuant to 20 C.F.R. §§ 404.1406(b)(2), 404.906(b)(2). (Dkt. 7-3, Pg ID 134-143). This regulation provides streamlined procedures as an experiment, in which State Agency disability examiners may

decide cases without documenting medical opinions from State Agency medical consultants.  The "single decisionmaker model" was an experimental modification of the disability determination process that happens to have been used in Michigan.  *See Leverette v. Comm'r*, 2011 WL 4062380 (E.D. Mich. 2011), *adopted by* 2011 WL 4062047 (E.D. Mich. 2011).  This experiment eliminated the reconsideration level of review and allowed claims to go straight from initial denial to ALJ hearing.  *Id*.  Most significantly, it allowed the state agency employee (the single decisionmaker) to render the initial denial of benefits without documenting medical opinions from the state agency medical consultants.  *Id*., citing 20 C.F.R. §§ 404.906(b)(2), 416.1406(b)(2).  The Programs Operations Manual System (POMS) requires it to "be clear to the appeal-level adjudicator when the SSA-4734-BK [the PRFC assessment form] was completed by an SDM because SDM-completed forms are not opinion evidence at the appeal levels." POMS DI § 24510.05.  Plaintiff's physical impairments were evaluated by an SDM, Shelley Wallace who concluded that plaintiff's impairments were not disabling.  (Dkt. 7-3, Pg ID 134-143).  Thus, no medical opinion was obtained at this level of review, in accordance with the model.

Here, though the ALJ did not rely on the opinion of the SDM, which would have been wholly improper, the lack of any medical opinion on the issue of equivalence is still an error requiring remand.  As set forth in *Stratton v. Astrue*,

24

987 F.Supp.2d 135, 147 (D.N.H. 2012), SSR 96-6p describes the process by which

ALJs are to make step-three determinations:

> The administrative law judge ... is responsible for
> deciding the ultimate legal question whether a listing is
> met or equaled. As trier of the facts, an administrative
> law judge ... is not bound by a finding by a State agency
> medical or psychological consultant or other program
> physician or psychologist as to whether an individual's
> impairment(s) is equivalent in severity to any impairment
> in the Listing of Impairments. However, *longstanding
> policy requires that the judgment of a physician* (or
> psychologist) designated by the Commissioner *on the
> issue of equivalence on the evidence* before the
> administrative law judge ... *must be received into the
> record as expert opinion evidence and given appropriate
> weight.*

1996 WL 374180, at *3 (emphasis added); *Barnett v. Barnhart*, 381 F.3d 664, 670

(7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical

judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20

C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir.

Nov. 22, 1995) ("Generally, the opinion of a medical expert is required before a

determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b));

*Modjewski v. Astrue*, 2011 WL 4841091, at *1 (E.D. Wis. Oct. 21, 2011) (warning

that an ALJ who makes a step-three equivalence determination without expert

opinion evidence runs the risk of impermissibly playing doctor).

The *Stratton* court further explains that SSR 96-6p treats equivalence

determinations differently from determinations on whether an impairment meets a listing, requiring expert evidence for the former, but not the latter. *Stratton*, 987 F.Supp.2d at 148 (citing *Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D. Tex. 2008) ("The basic principle behind SSR 96-6p is that while an ALJ is capable of reviewing records to determine whether a claimant's ailments meet the Listings, expert assistance is crucial to an ALJ's determination of whether a claimant's ailments are equivalent to the Listings.") (citation and quotation marks omitted)). The expert opinion requirement can be satisfied by a signature on the Disability Determination Transmittal Form. *Stratton*, 987 F.Supp.2d at 148 (citing SSR 96-6p, 1996 WL 374180, at *3 (The expert-opinion evidence required by SSR 96-6p can take many forms, including "[t]he signature of a State agency medical ... consultant on an SSA-831-U5 (Disability Determination and Transmittal Form).")); *Field v. Barnhart*, 2006 WL 549305, at *3 (D. Me. Mar. 6, 2006) ("The Record contains a Disability Determination and Transmittal Form signed by Iver C. Nielson, M.D .... discharging the commissioner's basic duty to obtain medical-expert advice concerning the Listings question."), *adopted by* 2006 WL 839494 (D. Me. Mar. 30, 2006). In the instant record, there is no Disability Determination and Transmittal Form signed by a medical advisor as to plaintiff's physical impairments. (Dkt. 7-3, Pg ID 143).

The great weight of authority holds that a record lacking any medical

advisor opinion on equivalence requires a remand. *Stratton*, 987 F.Supp.2d at

149-150(collecting cases); *see e.g. Caine v. Astrue*, 2010 WL 2102826, at *8

(W.D. Wash. Apr. 14, 2010) (directing ALJ to obtain expert-opinion evidence on

equivalence where none was in the record), *adopted by* 2010 WL 2103637 (W.D.

Wash. 2010); *Wadsworth v. Astrue*, 2008 WL 2857326, at *7 (S.D. Ind. 2008)

(holding that where record included no expert-opinion evidence on equivalence,

"[t]he ALJ erred in not seeking the opinion of a medical advisor as to whether Mr.

Wadsworth's impairments equaled a listing"); *see also Retka v. Comm'r of Soc.

Sec.*, 1995 WL 697215, at *2 (6th Cir. 1995) ("Generally, the opinion of a medical

expert is required before a determination of medical equivalence is made.") (citing

20 C.F.R. § 416.926(b)); *Maynard v. Comm'r*, 2012 WL 5471150 (E.D. Mich.

2012) ("[O]nce a hearing is requested, SSR 96-6p is applicable, and requires a

medical opinion on the issue of equivalence."); *Harris v. Comm'r*, 2013 WL

1192301, *8 (E.D. Mich. 2013) (a medical opinion on the issue of equivalence is

required, regardless of whether the SDM model is implicated).

Again, "[n]either the ALJ nor this court possesses the requisite medical

expertise to determine if [plaintiff]'s impairments ... in combination equal one of

the Commissioner's listings." *Freeman v. Astrue*, 2012 WL 384838, at *4 (E.D.

Wash. 2012). For these reasons, the undersigned concludes that this matter must

be remanded so that the ALJ can obtain the opinion of a qualified medical advisor

on the issue of equivalence as to plaintiff's physical impairments.  In the view of the undersigned, given that the opinions of a medical advisor must be obtained, plaintiff's credibility will necessarily have to be re-assessed in full after such an opinion is obtained.  Given the need for a remand on the issue of equivalence, plaintiff's remaining points of error need not be addressed.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings pursuant to Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 22, 2017              s/Stephanie Dawkins Davis
                                     Stephanie Dawkins Davis
                                     United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on <u>February 22, 2017</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                     s/Tammy Hallwood
                                     Case Manager
                                     (810) 341-7887
                                     tammy_hallwood@mied.uscourts.gov